UNDERWOOD TYPEWRITER CO. v. TYPEWRITER INSPECTION CO.

(Circuit Court of Appeals, Second Circuit. January 9, 1911.)

No. 119.

1. PATENTS (§ 328*)—INFRINGEMENT—TYPEWRITERS.
   The Wagner patent, No. 559,345, for improvements in typewriting machines, relating to means for locking the key levers at a predetermined point in the travel of the carrier across the page, claims 17, 18, and 20 *held* infringed, and claim 19 not infringed by the mechanism of the Schneelock patent, No. 852,400.

2. PATENTS (§ 328*)—INFRINGEMENT—TYPEWRITERS.
   The Wagner patent, No. 633,672, for improvements in typewriting machines, *held* not infringed by the mechanism of the Schneelock patent, No. 852,400.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Underwood Typewriter Company against the Typewriter Inspection Company. Decree for defendant, and complainant appeals. Modified.

See, also, 180 Fed. 726.

The patents are numbered 559,345 and 633,672, and are referred to respectively as senior and junior. The opinion at circuit is found in 177 Fed. 230. The dismissal was upon a finding of noninfringement.

Arthur von Briesen and Eugene Eble, for appellant.
Alfred Wilkinson and J. Edgar Bull, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LACOMBE, Circuit Judge. The patents have to do with means for locking the key-levers of a typewriting machine instantaneously at a predetermined point in the travel of the carriage to prevent the operator from printing superposed letters at the end of a line, whose length is predetermined by the adjustment of the carriage. The locking is effected by the engagement of a locking-bar with hooks on the tops of the keys near their forward end, and does not involve any straining, locking, or otherwise manipulating the universal escapement bar or any portion of the escapement mechanism. Provision is also made for sounding a warning bell to apprise the operator shortly before the keys are locked. The junior patent further provides means for releasing the keys after they are locked so as to allow the operator to print two or three more letters if needed to complete a syllable.

The patents are very fully set out, the alleged infringing machines described and the claims recited and analyzed in the opinion below, where will also be found a sufficiently full review of the prior art. The claims involved are 17, 18, 19, and 20 of the senior patent, and 25, 27, and 28 of the junior patent. We shall undertake to do no more than indicate briefly the reasons which induce us to modify the decree.

The Circuit Court held that utility and novelty cannot be denied, and that there was no anticipation. Nevertheless the art was a crowded one, which circumstance and the action of the Patent Office, requiring amendment of some of the claims, preclude any broad range of equivalents. We may turn at once to the claims themselves. Of the senior patent claim 17 is for—

"17. A paper-carriage and an actuating-key provided with a catch or shoulder located at the forward or power-receiving portion of the key, combined with a forwardly-oscillating bar adapted to engage or lock said catch, a forwardly-oscillating actuating-arm for said bar normally free from said bar, and an actuating-shoulder for said arm, said carriage being provided with a lip adapted to engage said actuating-shoulder to actuate said arm substantially as described."

We concur with the Circuit Court in the conclusion that infringement is not avoided by oscillating the bar backward to lock and forward to unlock. We find a fair equivalent of the forwardly-oscillating arm in the bell-crank lever of defendant, one arm of which, carrying a forwardly-projecting extension, reciprocates forward and backward pushing a pin against the depending tail which communicates motion to the oscillating locking-bar. The circumstance that there are connections between the arm and the source of motion and between the tail and the locking-bar seems unimportant. The claim, however, expressly provides that the actuating-arm shall be "normally free from said bar." It must equally be normally free from the connections through which motion is imparted to the oscillating bar. Whether in defendant's machines it is thus normally free or not is a question which is in dispute upon the evidence, and we find it difficult to reach a conclusion as to what is the correct solution. Inasmuch, however, as the defendant owns the Schneelock patent, in general conformity to which its machines are built and that patent

shows the pin on the arm and the part with which it engages normally apart and states in the specifications that the "pin is moved forward to engage the tail," we may infer that some of defendant's machines have been thus constructed. If defendant is correct in the contention that its machines are so organized that they will operate when this arm, or rather the pin or its extension, is not normally free from but is coupled to the tail so that as soon as the extension arm begins to move forward it will press upon the tail, they are free to sell such machines; they will not come within the language of this claim. We find in the shoulders 86 and 87 on the swinging lever of defendant a fair equivalent of the "actuating-shoulder" of the claim; and in the dog or pawl 78 of defendant's machine a fair equivalent of the "lip" on the carriage.

Claim 18 reads as follows:

"18. A paper-carriage and an actuating-key, combined with a bar adapted to engage or lock the key, a swinging arm having its free end placed in proximity to and normally out of contact with the bar, a bell-hammer placed in advance of the bar in the path of the free end of the arm, and a lip on the carriage for actuating the arm so as to make its free end successively strike the bell-hammer and the bar substantially as described."

Defendant's device has in reality two forward extensions of the reciprocating or oscillating arm of the bell-crank lever, one to engage the bell-hammer, the other to engage the "tail," and they come successively into operation. This seems to be a fair equivalent of the single oscillating arm of the claim striking the two other parts successively. Since we are satisfied that some of defendant's machines have been made with the end of the extension "free—in proximity to and normally out of contact with" the tail it strikes—we conclude that infringement of this claim is shown.

Claim 19 reads as follows:

"19. A paper-carriage and an actuating-key, combined with a bar adapted to engage or lock the key, an actuating-arm for the bar, a rock-shaft for said arm, a shoulder on said rock-shaft, said carriage being provided with a lip to engage the shoulder for actuating the shaft, and a bell-hammer provided with an inclined movable projection along which the arm rides in its forward stroke to actuate the bell-hammer, said arm on its return stroke being made to pass under or lift the projection independently of the bell-hammer substantially as described."

This is a very specific claim. We find in defendant's structure no inclined movable projection along and on top of which the arm rides on its forward stroke and under which it passes on its return stroke. We cannot read these qualifications of the inclined movable projection out of the claim, and with them in there is no infringement.

Claim 20 reads as follows:

"20. A paper-carriage and an actuating-key, combined with a bar adapted to engage or lock the key, an actuating-arm for the bar, a rock-shaft for said arm, a shoulder on said rock-shaft, a lip on the carriage for engaging the shoulder, and a bell-hammer actuated by said arm, said shoulder being step-shaped so as to be intermittently actuated by the carriage lip for separately actuating the bell-hammer and the locking-bar substantially as described."

Defendant seeks to differentiate its device from this claim by the circumstance that it does not have a rock-shaft for the swinging arm, but we find in its upper lever a fair equivalent for such rock-shaft. It is conceded that in defendant's machine there is a step-shaped part, but it is contended that it does not infringe because it is not located on a rock-shaft. Since, however, it is located on the equivalent of the rock-shaft, infringement is not thus avoided.

In finding noninfringement of the claims of the senior patent the Circuit Court relied on the self-imposed limitations of the claims, especially such as were written in after rejection by the Patent Office. Judge Ray says:

"I think the claims in issue call for a forwardly-swinging arm having one end free to engage and carry forward and hold the locking-bar or rod under the hooks and consequently in locking position. This is not the mode of operation of the defendant's device. In the one case the locking-rod is pushed forward by the free end of a forwardly-oscillating bar. In the other case the one end of the cam surface lever is depressed—thereby—lifting a bar, neither end of which is free, etc."

This qualification—"a free end"—is found in claims 17 and 18 as we have seen, but there is no such qualification in this claim, which was original claim 38 and was never rejected or amended. We think defendant's device is within its terms.

The junior patent is a very lengthy document and deals with several different improvements, for shifting from upper to lower case, for detachable envelope guide, etc. The specifications relating to hand-operated means for releasing the type bar lock of the senior patent, which is the only matter before us, extend from page 5, line 39, to page 6, line 39. We do not find in these specifications nor in the patent drawings sufficient warrant for the "drawing" upon which argument was had. That drawing shows the locking-rod 127 cut off so as to facilitate its being thrust back by the button. The patent expressly states that it "projects the entire length of the machine."

The patent is a narrow one in a crowded art, and not entitled to any broad construction, nor to any liberal application of the doctrine of equivalents. What the patent shows is a button which projects through the casing or framing of the machine, the shank of which button is attached directly to the locking-bar itself. By pressing the button the locking-rod is forced out of the path of the catches of the type keys.

As to the patentability of such an addition to the combination of the prior patent, we need express no opinion, since we are satisfied that infringement of the three claims relied upon is not made out. The claims need not be restated here. They will be found in the opinion below. No. 27 includes as one element, "a releasing-button, connected with said universal locking-bar," which is what the patent shows, a device whereby the locking-bar is pushed back out of engagement with the hooks by main strength, and held there by the hand while the additional characters are printed. We concur with the court below in the finding that:

"In defendant's machine a releasing-button operates to remove from action that part of the mechanism, which presses the locking-bar into locked position so that it no longer engages to keep the locking-bar in locking position and, by means of a spring the locking-bar is at once restored, on pushing the button, to its normal or unlocked position."

Infringement of this claim is not shown.

Claim 25 includes as an element "hand-operated means for releasing the lock-bar," a phrase broad enough to cover any and every means, if only it be operated by hand. The patentee was entitled to no such broad claim, and it can be saved only by reading into it the particular means shown in the patent, which defendant's structure does not infringe. The same may be said of claim 28, which enumerates as one element, "intermediate mechanism between the line-stop and the universal locking-bar to throw the same out of engagement."

The decree is reversed as to the senior patent and cause remanded with instructions to decree in favor of complainant on claims 17, 18, and 20, and to dismiss as to claim 19. The decree is affirmed as to the junior patent. No costs to either side in either court.