UNDERWOOD TYPEWRITER CO. v. FOX TYPEWRITER CO.

(Circuit Court of Appeals, Sixth Circuit.   October 11, 1915.)

No. 2580.

PATENTS ⬳328—INFRINGEMENT—TYPEWRITING MACHINE.

The Wagner patent, No. 633,672, for improvements in typewriting machines, is a narrow one in a crowded art, and not entitled to a broad construction, nor to a liberal application of the doctrine of equivalents. So construed, claim 17 *held* not infringed by a machine which does not have the "independently movable parallel shafts" on which the feed-rollers are mounted, which are made one of the elements of the claim.

Appeal from the District Court of the United States for the Western District of Michigan.

Suit in equity by the Underwood Typewriter Company against the Fox Typewriter Company.   Decree for defendant, and complainant appeals.   Affirmed.

Briesen & Knauth, of New York City, and Wilson & Johnson, of Grand Rapids, Mich., for appellant.

Chappell & Earl, of Kalamazoo, Mich., for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SATER, District Judge.

SATER, District Judge.   The Wagner patent, No. 633,672, for improvements in typewriting machines, was issued on September 26, 1899. It purports to disclose improved means for spacing the feed-rollers which co-operate with the platen to bring about the line feed of the paper.   The plaintiff, as assignee of the patent, charged the defendant with infringement of claims 17, 22, 23, and 24.   The trial court found in favor of the defendant.   The plaintiff prosecutes an appeal from so much of the decree as found noninfringement of claim 17, which claim is as follows:

"17. The combination with a paper-platen of independently movable parallel shafts, a plurality of feed-rollers, mounted on each of said shafts, and means for simultaneously throwing all of said feed-rollers out of contact with the platen."

In treating of certain claims of this same patent other than that now under consideration, it was held in Underwood Typewriter Co. v. Typewriter Inspection Co., 184 Fed. 329, 332, 106 C. C. A. 359 (C. C. A. 2), that the patent is a narrow one in a crowded art, and not entitled to a broad construction, nor to a liberal application of the doctrine of equivalents.   Our study of the instant case with reference to claim 17 leads to the same conclusion.   The limitations imposed on inventors by the state of the typewriter art noted in Underwood Typewriter Co. v. Royal Typewriter Co., 224 Fed. 477, —— C. C. A. —— (C. C. A. 2).   The functional and general character of claim 17 requires for its interpretation resort to the drawings and the descriptive portion of the specification.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The drawings show a platen, below which are two parallel shafts spaced apart, each bearing a series of rollers. One of the roller shafts is held in a movable manner at each end by means of arms loosely surrounding a rod, intermediate of and projecting below the roller shafts, rigidly mounted in the framework of the machine, and provided with ratchet-faced hubs adapted to co-operate with ratchet-faced collars. Attached to each of the collars is a spring, the inner end of which is secured to the hub of an arm on whose outer end is mounted the other roller bearing shaft. The springs normally hold the rollers in contact with the platen, their tension being regulated by the collars. The arrangement is such that each of the roller shafts is independently movable about the intermediate rod (which serves as a support to both of them), and that the above-mentioned springs, acting upon the roller shafts, tend to turn them in opposite directions about the central or intermediate rod, and thus to hold the rollers against the platen or the paper on it. When the paper inserted in and passing through the machine reaches the rear feed rollers, such rollers, on account of the paper passing between them and the platen, are simultaneously drawn away from the platen; but the other or front series of rollers still remain in contact with the platen, until, by its turning, such last-named series of rollers also grip the paper. They also are then forced away from the platen, but independently of the first or rear series of rollers. When the rollers are thrown entirely out of contact with the platen, the two roller shafts move simultaneously with the intermediate rod. The rollers are removed from contact with the platen by means of a lever connected by an arm with a rod shown at 76 on the drawings, which is moved laterally or longitudinally and parallel with the intermediate rod. The operation of the lever causes certain sliding arms to ride up cams formed integral with and secured to the intermediate rod, thereby carrying the roller shaft out of contact with the surface of the platen. The sliding arms, which assume a rotary movement when the rollers are removed from contact with the platen, are restored to position by means of a spring specially designed for that purpose. If in the operation of the machine it is desired for the purpose of adjusting or straightening the paper or for other cause to throw the rollers out of contact with the platen, the pressure of the independent feed-rollers is released in the manner above stated by means of the above mentioned lever.

The defendant employs four roller shafts, instead of two, all of which are parallel with the platen. They are in pairs, and are each about one-half the length of those in the plaintiff's device. Each pair is within cradle-shaped frames. The defendant also uses an intermediate rod about which the cradle-shaped frames connecting the roller shafts rock, each frame rocking independently of the other. The frames are independent of each other, excepting that both are mounted on the intermediate supporting rod. This rod, unlike the similarly located rod in plaintiff's device, is not rigidly mounted in the framework of the machine. The rollers on the shafts, like plaintiff's, contact with the platen. Although the shafts are movable and parallel, they do not move independently of each other. When one moves in

one direction—upward, for instance—the other moves in the opposite direction. As independently movable shafts are made one of the elements of plaintiff's claim in question, the absence of shafts of that character in defendant's device defeats the charge of infringement. When the paper passing between the rear rollers in the defendant's machine lifts such rollers, the front rollers are necessarily moved downwardly against the platen to the extent of the thickness of the paper. The difference in this respect in the two mechanisms is due to the attachment in defendant's device of the roller shafts to the cradle-like crossbars, which rock about the intermediate rod, whereas in plaintiff's device there is no rocking motion present or contemplated, because each roller shaft, being connected independently of the other to the rigidly fixed intermediate rod, moves independently of such other.

The defendant's device also differs from that of plaintiff, in that in throwing the defendant's rollers out of contact with the platen there is no rotation whatever of the arms which carry the roller shafts, but the entire roller framework is carried away from the platen without rotation. This is effected by supporting the intermediate rod on arms mounted on a rock shaft journaled at its ends in the framework of the machine, a handle being connected to one of the ends of such shaft. Attached to the framework of the machine are three springs which hold the rock shaft in position. The free ends of the springs rest under and against the intermediate rod—one spring being at each of its ends and another at its middle. These springs are not connected with the feed-roll mechanism, as are those in plaintiff's device, excepting that their free ends press against the intermediate rod. In the plaintiff's device the centers of the coiled springs are the same as that of the intermediate rod, one end of each spring being connected to one of the parallel roller shafts, and the other end to the other of such parallel shafts, the two roller shafts being thus connected by means of such springs. The springs in the two devices, therefore, perform their functions in a different way to accomplish the result of holding the rollers against the platen. To lower defendant's feed-rollers out of contact with the platen the handle is pressed down. This rocks a shaft and arms attached to it, and carries down the intermediate rod, and with it the entire frame-work embracing the rollers, which are thus carried bodily away from the platen, but without any relative change of their position laterally or longitudinally and without any rotation of the roller shaft. The defendant's roller shafts, when the rollers are thus disengaged from the platen, do not occupy, as do plaintiff's, a position with respect to the intermediate rod different from that occupied by them when in contact with the platen.

A determination of the case may be safely rested on the absence from the defendant's device of the element of independently movable parallel shafts called for by claim 17, but it will also be noted that there are radical differences in the construction of the two mechanisms which obviate the charge of infringement.

The District Court is affirmed.